WO

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| SK5-ELA LLC,<br><br>    Plaintiff,<br><br>v.<br><br>Nationwide Insurance Company of America, *et al.*,<br><br>    Defendants. | No. CV-19-08004-PCT-JJT<br><br>**ORDER** |

At issue is Defendants' Motion for Summary Judgment (Doc. 87, MSJ; Doc. 88, Defs.' Statement of Facts ("DSOF")), to which Plaintiff filed a Response (Doc. 129, Resp.; Doc. 140 & Docs. 130-1 through 130-35, Pl.'s Am. Statement of Facts ("PSOF")), and Defendants filed a Reply (Doc. 137, Reply). The Court finds this matter appropriate for resolution without oral argument. LRCiv 7.2(f).

**I. BACKGROUND**

Clear Sky Capital owned real property in Flagstaff, Arizona, called The Lodge apartments and consisting of 17 three-story apartment buildings, 42 carport structures, five parking structures, and a clubhouse building. Allison Shelton Real Estate Services, aka Shelton-Cook, managed the property. Defendants Nationwide Insurance Company of America and Depositors Insurance Company issued a Premier Businessowners Policy covering the property from February 1, 2015 to February 1, 2016 (PSOF Ex. 15, 2015–16 Policy) and from February 1, 2016 to Feb. 1, 2017 (PSOF Ex. 16, 2016–17 Policy), and Clear Sky and Shelton-Cook were listed as insured parties.

In May 2016, Plaintiff SK5-ELA, LLC, was engaged in purchasing The Lodge from Clear Sky when it discovered damage to the property's roof structures in the pre-purchase inspections, which it reported to Clear Sky. On May 17, 2016, Nicole Mandarino, Shelton-Cook's risk manager, made a hail damage claim to Defendants, listing the claim date—May 17, 2016—as the date of loss. As part of the closing process for the sale of the property, Clear Sky assigned its rights to Plaintiff with regard to the hail damage claim against Defendants.

On June 14, 2016, Leslie Bratz, a claims manager for Defendants, reported that she spoke with Allen Glidewell, Clear Sky's multi-family asset manager, who "said the most significant hail they had was last July (2015). He said they [had] another minor hail storm last summer (2015) and one in May 2016." (PSOF Ex. 2.) She stated that she ordered and received a CoreLogic Hail Verification Report for the property for the period of January 1, 2006, to June 6, 2016, which said there had been "[n]o reported hail since 7/25/2013 within 3 miles of location" and the "[o]nly & largest hail at location was 0.9" on 7/2/2013." (PSOF Ex. 2.) She further stated, "We are continuing investigation including inspection of all roofs this week." (PSOF Ex. 2.)

On June 16, 2016, Derrick Driggs, Defendants' adjuster, inspected the property with Todd Springer, a Professional Engineer with Augsburger Komm Engineering Inc. Mr. Springer found no reports of storms with hail of ¾ inch diameter or larger at the property after February 2015—the date the first Policy on the property went into effect—and therefore none large enough to cause damage at the property, which is 1 inch or larger. (DSOF Ex. D at 8, 10 of 11.) Indeed, the hail on May 17, 2016—the originally reported date-of-loss—was small, or "pea-sized." (DSOF Ex. D at 8 of 11.) Mr. Springer confirmed that the roof was physically damaged, but the damage could not be attributed to hail for numerous reasons, including that the damage could be found on the roofs of certain structures and not others, instead of throughout the property, and the shape of the damage did not correspond to hail damage. (DSOF Ex. D at 10 of 11.) Rather, he concluded to a reasonable degree of engineering certainty that snow removal equipment caused the visible

scarring on the roofs, particularly because the roof damage was concentrated in roof valleys, where snow and ice accumulate; no damage was observed near roof ridgelines; and damage was most prevalent on portions of the roof receiving minimal sunlight in winter, where snow and ice remain longer.[1] (DSOF Ex. D at 10 of 11.)

Plaintiff provides evidence that it contends undermines Mr. Springer's report. First, Plaintiff proffers an excerpt of Mr. Springer's file that includes data from the National Centers for Environmental Information, under the National Oceanic and Atmospheric Administration (NOAA), saying that a location in Flagstaff received 1–3/4 inch diameter hail on July 1, 2015. (PSOF Ex. 4.) Plaintiff also proffers the 2021 Declaration of a roofing layman, David Morris, who reported he looked at the roof in 2016 and concluded there was hail damage—without preparing a report—and who did not like the way Mr. Springer, the expert inspector, conducted the inspection in June 2016, finding it biased. (PSOF Ex. 6.)

On behalf of Clear Sky, Mr. Glidewell also ordered a roof inspection, and Gorman Roofing conducted the inspection on June 26, 2016. The parties did not proffer any report of the inspection, although the deposition of a representative of Gorman Roofing, Larry Miller, confirmed the results of the inspection. (PSOF Ex. 31.) In his recorded interview with Mr. Driggs as part of the claims adjustment process, Mr. Glidewell averred that Gorman Roofing, like Mr. Springer, had concluded that "the scrapes or what have you on the roofs . . . were from, you know, some kind of snow removal." (DSOF Ex. G at Nationwide 005970.) He confirmed that Gorman Roofing found that although the roofs had visible damage, "they were watertight and performing well." (DSOF Ex. B, Glidewell Dep. At 47.) Mr. Glidewell also said, "[Gorman Roofing] recommended a replacement on building 10 and miscellaneous vent cover replacements throughout the property that were either blown off or damaged by what they said was hail." (DSOF Ex. G at Nationwide 005970.) For Defendants' part, Mr. Driggs conceded that Defendants believe there is hail damage to metal vents, as Gorman Roofing found, which can be caused by small-sized hail, but that Defendants found no hail damage to actual roof shingles. (DSOF Ex. G at

---

[1] Clear Sky never used snow removal equipment on the roofs, so any such damage was caused before Clear Sky bought the property in 2014.

Nationwide 005973.) Mr. Glidewell said, "the scarring on the roof was not a question[] for us. We knew it was there and you know it gets back to, you know, do we or do we not have recent hail damage in the last, you know, 15 months and if that conclusion is we don't, it is what it is." (DSOF Ex. G at Nationwide 005976.) As for the June or July 2015 suggestion of a date of loss, Mr. Glidewell stated that he simply looked storms up on the internet based on the property's zip code. (DSOF Ex. G at Nationwide 005972.)

Because Defendants' investigation revealed "no verified hail events" and "no weather support or physical evidence" to support Shelton-Cook's claim that hail damaged the roofs of the property during the coverage period, Defendants denied the claim on July 16, 2016. (DSOF Ex. H.) Clear Sky's counsel asked Defendants to reconsider on September 28, 2016, and in the absence of any new evidence, Defendants declined. (DSOF Exs. I, J.)

Two years later, in August 2018, Plaintiff hired David Skipton, a public adjustor, to evaluate the claim, and Plaintiff engaged another roofing company, Engineering Specialists Inc. (ESI), to inspect the roof. On October 2, 2018, Plaintiff filed a Complaint (Doc. 1-1 at 2–9, Compl.) raising claims of breach of insurance contract and bad faith against Defendants. Defendants now move for summary judgment.

## II.     LEGAL STANDARD

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is appropriate when: (1) the movant shows that there is no genuine dispute as to any material fact; and (2) after viewing the evidence most favorably to the non-moving party, the movant is entitled to prevail as a matter of law. Fed. R. Civ. P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986); *Eisenberg v. Ins. Co. of N. Am.*, 815 F.2d 1285, 1288–89 (9th Cir. 1987). Under this standard, "[o]nly disputes over facts that might affect the outcome of the suit under governing [substantive] law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A "genuine issue" of material fact arises only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

In considering a motion for summary judgment, the court must regard as true the non-moving party's evidence, if it is supported by affidavits or other evidentiary material. *Celotex*, 477 U.S. at 324; *Eisenberg*, 815 F.2d at 1289. However, the non-moving party may not merely rest on its pleadings; it must produce some significant probative evidence tending to contradict the moving party's allegations, thereby creating a material question of fact. *Anderson*, 477 U.S. at 256–57 (holding that the plaintiff must present affirmative evidence in order to defeat a properly supported motion for summary judgment); *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 289 (1968).

"A summary judgment motion cannot be defeated by relying solely on conclusory allegations unsupported by factual data." *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). "Summary judgment must be entered 'against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *United States v. Carter,* 906 F.2d 1375, 1376 (9th Cir. 1990) (quoting *Celotex*, 477 U.S. at 322).

### III. ANALYSIS

#### A. No Evidence of Sufficiently Large Hail at the Property During the Coverage Period

The parties do not dispute that, to prove the roof sustained hail damage during the coverage period such that the roof damage is covered under the Policies, Plaintiff must show that hail of sufficient size fell on the property during the coverage period. In her communications adjusting the claim, Ms. Bratz, one of Defendants' claims managers, stated that she obtained a CoreLogic Hail Verification Report for the subject property that showed the only and largest hail at the property fell on July 25, 2013—well before the coverage period—and it was 0.9 inch in diameter. (PSOF Ex. 2.) Likewise, Mr. Springer's inspection report references data from the NOAA, which reports only hail of ¾ inch diameter or larger, and the data shows that, even though "NOAA provides four reports of significant hail in and around Flagstaff between February 2015 and the date of [the] inspection, none of these reports show hail occurring over the subject complex." (DSOF

Ex. D at 8 of 11.) Mr. Springer also references the National Weather Service guidance that "[s]cientific research indicates that significant damage to real property such as roofing materials does not occur until hail stones reach at least 1" in diameter." (DSOF Ex. D at 10 of 11.)

Plaintiff argues that sufficiently large hail fell on the property on July 1, 2015—the date Mr. Glidewell came up with by looking at historical weather reports. To begin with, as Defendants point out, neither Clear Sky nor Shelton-Cook gave prompt notice to Defendants of hail damage after an alleged July 1, 2015, storm, as the Policies require. (MSJ at 3.) It is undisputed that roof damage was only discovered during a May 2016 inspection when Clear Sky was selling the property. In any event, Mr. Glidewell is not qualified to look at weather data on the internet and determine whether hail of sufficient size to cause roof damage fell on the property on July 1, 2015. The same can be said for Mr. Skipton (PSOF Ex. 14, Skipton Dep. at 53), who said he remembers hail in Flagstaff while driving from his home to the hardware store that day. Such a statement is not probative to a determination whether hail of sufficient size to cause roof damage fell on the property. In short, none of this evidence creates a genuine issue of fact by refuting the evidence from the weather services.

Plaintiff also proffers notes from Mr. Springer's file that include an excerpt from the NOAA's Storm Events Database noting that 1.75 inch diameter fell somewhere in Flagstaff on July 1, 2015. (PSOF Ex. 4.) Again, this does not show that hail of that size fell on the property; indeed, the hyperlink Plaintiff included with its Exhibit shows the location of the reported hail from approximately 20 miles north of Flagstaff to approximately 10 miles west of Flagstaff. (PSOF Ex. 4.)

Plaintiff also introduces a theory that the property lies in a "radar shadow," such that weather radar may not pick up hail storms, by way of a report produced by Rocco Calaci, a meteorologist. (PSOF Ex. 21.) He concludes that "radar beam blocking" prevents weather images from being taken at the property due to its location in the mountains. (PSOF Ex. 21 at 6.) This evidence, such as it is, lacks probative value for several reasons. First,

even if true, the fact that the property lies in a radar shadow does not, without more, demonstrate that hail fell on the property on July 1, 2015, let alone demonstrate that the hail was of sufficient size to cause roof damage. Second, even if the property lies in a radar shadow, weather data such as that provided by CoreLogic shows that no hail of substantial size fell within three miles of the property since 2013. (*E.g.* PSOF Ex. 2.) And third, the fact that weather radar has detected hail at the property in the past dispels the theory that a radar shadow prevented detection of hail on July 1, 2015. To the extent the Court could find the radar shadow theory adequately reliable, it leads at best to hypothetical conclusions about July 1, 2015. (*See also* PSOF Ex. 12, Selover Dep. at 20–21, 29 (meteorologist testifying that hail falling in the Flagstaff area on July 1, 2015, does not mean that it fell on the property, and no meteorological evidence exists to show it fell on the property that day).)

In sum, Plaintiff has no credible evidence that hail fell on the property during the coverage period, including on July 1, 2015, of sufficient size to cause roof damage. Without such evidence, Plaintiff cannot show that it is entitled to coverage for hail damage to the property's roofs under the Policies, and the Court must grant summary judgment to Defendants on their breach of insurance contract claim.

**B.    No Reliable Evidence of Hail Damage to the Property's Roofs**

Even if Plaintiff had shown that sufficiently large hail fell at the property during the coverage period, Plaintiff has no reliable evidence that the roof has hail damage suffered during the coverage period. The expert report from Mr. Springer and the roof inspection commissioned by Clear Sky and completed by Gorman Roofing—both from June 2016—revealed damage to the roof shingles caused by snow removal equipment. Plaintiff's evidence—that another roofer it contacted, Mr. Morris, provided a Declaration in 2021 stating that there was hail damage when he looked at the roofs in 2016 and he did not like the way Mr. Springer conducted the inspection—is not sufficient to undermine Mr. Springer's inspection report. Among other issues, Mr. Morris did not produce a report or lay out his qualifications or the bases of his later-documented opinions, and his opinions

are self-serving and insufficiently reliable to avoid misleading a factfinder under Fed. R. Evid. 403.[2]

Finally, Plaintiff commissioned an inspection of the roofs in 2018, two years after the prior inspections and three years after the alleged date of loss of July 1, 2015. While the company Plaintiff retained, ESI, opined that the property's roofs had hail damage, the report itself recognizes "a slight degree of uncertainty in conclusions drawn from this examination . . . due to the length of time that passed between the occurrence of the loss and our inspection of the site." (PSOF Ex. 13 at 10.) It would be a close question as to whether the report of an inspection conducted this long after the alleged date of loss would have sufficient relevance and reliability for the Court to consider it, or to create a genuine dispute of fact on this issue, allowing Plaintiff to avoid summary judgment. But because Plaintiff has no evidence that hail of sufficient size to cause roof damage fell on the property during the coverage period, the Court need not resolve the question whether ESI's report is sufficiently reliable.

## C. No Evidence of Bad Faith

In Count 2, Plaintiff claims that Defendants breached the duty of good faith and fair dealing in denying it coverage under the Policies. Under Arizona law, such a claim is proven by demonstrating that the insurer acted unreasonably toward the insured and knew or recklessly disregarded the fact that the conduct was unreasonable. *Zilisch v. State Farm Mut. Auto. Ins. Co.*, 995 P.2d 276, 280 (Ariz. 2000). If an insurer conducts a reasonable investigation, it can in good faith deny a claim that is "fairly debatable." *Brown v. U.S. Fid. & Guar. Co.*, 977 P.2d 807, 815 (Ariz. Ct. App. 1998), *as amended* Aug. 5, 1999; *Trus Joist Corp. v. Safeco Ins. Co. of Am.*, 735 P.2d 125, 134 (Ariz. Ct. App. 1986). Mistake, inadvertence or negligence alone are not sufficient to establish a bad faith claim. *Rawlings v. Apodaca*, 726 P.2d 565, 576 (Ariz. 1986); *Miel v. State Farm Mut. Auto. Ins. Co.*, 912 P.2d 1333, 1339 (Ariz. Ct. App. 1995).

---

[2] The Court also declines Plaintiff's invitation to engage in the examination of the accuracy and objectivity of an expert report produced by Mr. Springer in another case involving a different insurance company; such evidence would have little to no probative value in this entirely different matter. (*E.g.*, Resp. at 2–3.)

Aside from disputing Defendants' decision to deny it coverage under the Policies—which the Court finds was not only "fairly debatable" but justified, above—Plaintiff offers no probative evidence that Defendants' investigation of the claim was unreasonable. As outlined above, Defendants investigated Plaintiff's claim as soon as Shelton-Cook filed it, including obtaining the relevant weather data and inspecting the property's roofs. Gorman Roofing's inspection on behalf of Clear Sky revealed the same conclusions as Mr. Springer's inspection on behalf of Defendants. Plaintiff's allegations of bias on Mr. Springer's part, based on Mr. Morris's Declaration and alleged evidence from other, unrelated lawsuits, suffer from a lack of reliability and relevance. Plaintiff itself did not re-investigate Defendants' denial of Shelton-Cook's claim until two years later; nothing about that delay indicates bad faith on Defendants' part.

As summarized by Defendants' insurance adjustment expert:

> Given the speculative nature of Plaintiff's claimed date of loss, the conflicting evidence about weather events that might have caused damage, the undisputed evidence of prior mechanical (scraping) roof damage, the recorded statement of Mr. Glidewell in which he generally agreed with the insurer's position, and the conflicting opinions concerning repair versus replacement of the roofs, it would be wrong to conclude that the insurer was indifferent to the insured's rights, failed to give equal consideration to the insured's position, or acted unreasonably in investigating and denying the claim.

(DSOF Ex. N.) For these reasons, the Court will also grant summary judgment to Defendants on Plaintiff's bad faith claim.

**IT IS THEREFORE ORDERED** granting Defendants' Motion for Summary Judgment (Doc. 87). Defendants may file an application for attorneys' fees and costs that complies with the Local Rules.

**IT IS FURTHER ORDERED** directing the Clerk of Court to enter judgment in favor of Defendants and close this case.

Dated this 30th day of September, 2021.

Honorable John J. Tuchi
United States District Judge